LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONALD CHARLES, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>HSBC BANK USA, N.A.,<br><br>Defendant. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, DONALD CHARLES ("Plaintiff"), on behalf of himself and others similarly situated, by and through their undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendant HSBC BANK USA, N.A. ("Defendant") and states as follows:

<u>**INTRODUCTION**</u>

1.      Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime, due to off-the-clock work, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including

1

overtime, due to off-the-clock work; (2) statutory penalties; (3) liquidated damages; and (4) attorneys' fees and costs.

3.      Defendant HSBC Bank USA, N.A. is the American subsidiary of the multinational banking conglomerate HSBC.  Defendant offers banking and financial services across the United States while operating and setting nationwide policy from its headquarters located at 452 Fifth Avenue, New York City, NY 10018.  From this New York headquarters, Defendant sets wage policies for its approximately 234 branches which are located across the United State, including at the following: (i) New York (145 branches), (ii) California (43 branches), (iii) Connecticut (3 branches), (iv) Florida (12 branches), (v) Maryland (4 branches), (vi) Pennsylvania (2 branches), (vii) Virginia (6 branches), (viii) Washington (8 branches), (ix) D.C. (3 branches), (x) New Jersey (8 branches) (the "Branches").

4.      Plaintiff, FLSA collective members, and Class members are all current and former employees who worked as customer service representatives, premier bankers, life and relationship bankers, and relationship managers for any of Defendant's branches ("the Class"), and were victims of Defendant's underpayment of wages, including overtime.

5.      Plaintiff brings this wage and hour class action on behalf of himself and all persons, who during the applicable limitations period up to and including the present, were similarly underpaid by Defendant in violation of protections afforded under the FLSA, parties' agreements, and the laws and regulations passed in the following states:

     i.    California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

    ii.    Connecticut: Connecticut Wage Act Conn. Gen. Stat. §§31-58, *et seq.*;

   iii.    District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;

   iv.    Florida: Florida's Minimum Wage Act's, Fla. Stat. 448.08 *et seq.*;

     v.     Maryland: Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment Collection Law, Lab. & Empl. § 3-501 *et seq.*;

     vi.    New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

     vii.   New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;

    viii.   Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;

     ix.    Virginia: Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*;

     x.     Washington: Washington Minimum Wage Act, R.C.W. 49.46.005, *et seq.*; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*;

6.     Defendant instituted a nationwide policy of not compensating meal breaks of employees, despite employees being forced to work through their meals.  Defendant required Class members to self-report for meal breaks and for their weekly work hours.  As part of this self-reporting, employees were instructed to record their exact scheduled hours, including scheduled meal breaks, and not self-report any hours over 40 hours in a week, unless overtime work was pre-approved by management.  Defendant was aware that Class members worked through the meal breaks, and implemented a policy that fostered employers to self-report less time even though its written policy urged employees to report accurately.

7.     While self-reporting clock-outs for meals, employees would either work through lunch or were required to eat at their station, undertake training, respond to phone calls, and aid in customer requests.  Plaintiff, FLSA collective members, and Class members were (i) not permitted to leave their premises of work for meals, (ii) not permitted a free and clear meal-break and (iii) were forced to work through meals entirely.  Despite employees like Plaintiff never being permitted a free and clear meal-break, Defendant never compensated Plaintiff and other employees for this time.  *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 64 (2d. Cir. 1997) (Finding a lack of free and clear lunch break in part due to the fact employees lacked flexibility with regard

to the lunch break and their presence at the work site was indispensable.); *see also* 29 C.F.R. Section 785.19 ("The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.").

8.      In addition to the failure to pay employees for all hours worked due to uncompensated meal breaks, they worked hours beyond their schedules, including overtime hours, which they could not self-report without fear of reprisals.  Plaintiff, FLSA Collective Plaintiffs, and Class members worked hours beyond their scheduled shifts but were instructed not to put time past 40 hours a week.  Plaintiff, FLSA Collective Plaintiffs, and Class members would self-report 40 hours but work beyond that time to complete all required work and meet their Key Performance Indicators (certain quantified performance targets), in order to avoid being subject to productivity reviews and possible reprimand/termination.

9.      Additionally, at all times relevant to this action, Defendant failed to compensate employees, when they clocked-in-and-out for short breaks lasting anywhere between 1-minute to 20-minutes in violation of 29 C.F.R. 758.18 and State wage laws.

10.     Plaintiff bring this wage and hour class action on behalf of putative collective members, and putative class members who were similarly underpaid by Defendant in violation of protections afforded under the FLSA and the applicable wage laws of each State where Defendant operates.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the Defendant is headquartered in this District, all the events, witnesses, policies, and procedures giving rise to this Complaint emanated from this District..

## PARTIES

13.     Plaintiff DONALD CHARLES is a resident of Kings County, New York.

14.     All the Branch Locations are managed by the same executive management team operating from the same Headquarters in New York, which sets standardized policies and managerial training.  Further, each Branch Location is engaged in related activities, share common ownership, and have a common business purpose:

(a) Defendant HSBC BANK USA, N.A., maintains a centralized payroll department and human resources department.  Defendant operates a single career page allowing interested persons to apply to positions relating to all Branch Locations.  Despite listing open positions across the country, Defendant centralizes payroll positions, marketing positions, executive management positions, IT positions, and other administrative roles at Defendant's headquarters in New York, New York.

(b) When seeking leave or company assistance with other employment issues, employees are directed to contact the same central office, which evaluates requests, hires, fires, trains managerial employees, and sets company-wide policy.

(c) Plaintiff and other employees were transferred between Branch Locations. When employees move to differing Branch Locations, they are subject to the same wage and hour policies and procedures established by Defendant.

(d) Plaintiff himself was often transferred to other nearby Branch Locations on an as needed basis, such transfers would even occur mid-shift.

15.     Defendant HSBC Bank USA, N.A. is a foreign corporation organized under the laws of the State of Virginia with a headquarters and a principal place of business located at 452 Fifth Avenue, New York City, NY 10018.

16.     At all relevant times, Defendant was and continues to be an "enterprise engaged in business" within the meaning of the FLSA and the state wage laws and the regulations passed thereunder.

17.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members were directly essential to the business operated by Defendant.

18.     Plaintiff have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## NATIONWIDE FLSA COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiff bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all teller,  customer service representatives, premier bankers, business bankers, life and relationship bankers, and relationship managers, employed at any Branch Location on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

20.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper

overtime wages at the rate of one-and-one-half times the regular rate of pay, due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

21.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## NATIONWIDE RULE 23 CLASS ACTION ALLEGATIONS

22.    Plaintiff bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of himself and a class of all customer service representatives, premier bankers, business bankers, life and relationship bankers, and relationship managers, employed at any Branch Location in the six (6) years, or the relevant statutory period of each state's applicable labor law if longer, prior to the filing of the Complaint in this case (the "Class").

23.    To the extent necessary, Plaintiff will designate subclasses for each of the States where Defendant have employees.

24.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendant. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

25.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendant, there is no doubt that there are more than forty members of the Class. The proposed Class includes a Sub-Class of employees employed by Defendant in the States of New York, California, and States with requirements to provide earning statements to employees ("Sub-Class") who will have additional state law claims against Defendant. There is no doubt that the Sub-Class also contains more than forty (40) members.

26.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same practices of Defendant as alleged herein of: (i) failing to pay Class members proper wages, including overtime, due to off-the-clock work, and (ii) failing to pay Class members for breaks lasting 20-minutes or less. Further, due to the above violations all Class members experienced a failure to receive proper wage notices and proper wage statements, as required by state laws and regulations.

27.    Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

28.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

29.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30.    Defendant and other employers throughout the country violate state wage and hour laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide

class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

      a.  Whether Defendant employed Plaintiff and the Class within the meaning of state wage and hour laws;

      b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay the Class members properly;

      c.  At what common rate, or rates subject to common methods of calculation, was and is Defendant required to pay Plaintiff and Class members for their work;

      d.  Whether Defendant properly notified Plaintiff and the Class members of their regular hourly rate and overtime rate;

      e.  Whether Defendant properly compensated Plaintiff and Class members for all hours worked, including overtime hours;

      f.  Whether Defendant failed to compensate Plaintiff and Class members for all hours worked, due to non-payment for off-the-clock work;

      g.  Whether Defendant failed to compensate for breaks lasting 20 minutes or less;

      h.  Whether Defendant required or permitted Plaintiff and Class members to work during uncompensated deducted meal breaks;

      i.  Whether Defendant paid Plaintiff and the Class members the proper overtime wages at a rate that is at least one-and-one-half times the regular rate of pay for all hours worked in excess of forty each workweek;

j.   Whether Defendant provided to Plaintiff and Class members wage and hour notices, at date of hiring and as required thereafter under state wage and hour laws; and

k.   Whether Defendant provided Plaintiff and Class members proper wage statements with each payment of wages as required by state wage and hour laws.

## STATEMENT OF FACTS

32.   On or about December 5, 2005, Plaintiff was hired by Defendant to work as a Customer Service Representative a/k/a teller at Defendant's HSBC branch at 174 Montague Street, Brooklyn NY 11201 (and other branches throughout Brooklyn, where he was sent on an as needed basis at least several times a week). For the last five (5) years of Plaintiff's employment, Plaintiff worked as a premier banker and, later on, a relationship manager.   Plaintiff's employment with Defendant continued until around February 2022, when Plaintiff was terminated. Each of Plaintiff's positions were positions which were paid hourly.

33.   While employed by Defendant, Plaintiff was scheduled to work from 8:30 a.m. to 5:30 p.m. working nine hours per day, five days per week, for a total of approximately forty-five hours per week. FLSA Collective Plaintiffs and Class members worked similar hours.

34.   From 2017 until his termination, Plaintiff was compensated at $35.00 per hour by bi-weekly checks. FLSA Collective Plaintiffs and Class members were similarly compensated salaries and rates by bi-weekly checks.

35.   Plaintiff, FLSA Collective Plaintiffs, and Class members were not paid for all overtime hours worked.

36.     Plaintiff was specifically told by his supervisor early in his employment with Defendant that he "cannot put anything over 40 hours per week" even if he worked over 40 hours for any particular weeks. For weeks where Plaintiff worked over 40 hours, Plaintiff was directed to underreport his hours so that it reflects 40 hours on his timesheet. As a result, Plaintiff was never paid overtime for all hours worked in excess of forty per week.

37.     Plaintiff, FLSA Collective Plaintiffs, and Class members are all current and former employees working as customer service representatives, premier bankers, life and relationship bankers, and relationship managers for Defendant, and were victims of Defendant's underpayment of wages, including overtime.  Defendant instituted a nationwide policy of not compensating meal breaks of employees, despite employees being forced to work through the entirety of their lunch. While clocked-out for lunch, employees were required to eat at their station, undergo mandatory training, respond to phone calls, and aid in customer requests.  Plaintiff, FLSA Collective Plaintiffs, and Class members were (i) not permitted to leave their premises of work for lunch, (ii) not permitted a free and clear meal-break and (iii) were forced to work through lunch entirely. Despite employees like Plaintiff never being permitted a free and clear meal-break, Defendant never compensated Plaintiff and other employees for this time.

38.     Due to Defendant's policy of not compensating meal breaks, Plaintiff, FLSA Collective Plaintiffs and Class members were not compensated for at least thirty minutes per day worked. Some locations provided one-hour meal breaks. As a result, Plaintiff, FLSA Collective Plaintiffs and Class members did not receive compensation for all hours, including overtime, worked.

39.     Plaintiff would be missing approximately five (5) hours of overtime pay each week due to Defendant's failure to compensate for meal breaks.  FLSA Collective Plaintiffs and Class members were similarly short overtime pay every week.

40.     Plaintiff would work an additional hour each day, off-the-clock, in order to sign-up more clients to meet sales goals, attend conference calls, meetings, and waiting for all tellers to close up. Specifically, Plaintiff was not allowed to leave until the last bank teller and banker completes their final transaction. Therefore, Plaintiff was time shaved a total of five (5) hours per week for the failure to compensate post-shift work. All FLSA Collective Plaintiffs and Class members were subject to this unpaid off-the-clock work and suffered similar unpaid time.

41.     Furthermore, Defendant would require Plaintiff to respond to work related texts at least 4 times per week while he was off-the-clock. Each text interaction lasts at least five minutes. Therefore, Plaintiff was further timeshaved approximately 30 minutes per week.

42.     Additionally, Plaintiff would clock out for a short, less than 20-minutes, rest breaks. However, he was not compensated for this time even though it is compensable work time under FLSA and State wage laws. FLSA Collective Plaintiffs and Class members were similarly not paid for these short rest breaks. The extent of the damages due to this violation can be calculated directly from Defendant's records for Plaintiffs, FLSA Collective Plaintiffs, and Class members.

***Plaintiff's and Class Members' Claims for Improper Wage Notices and Earning Statements:***

43.     Plaintiff and Class members never received proper wage notices from Defendant. They also did not receive accurate wage statements from Defendant.  41 of 50 States require paystubs with accurate information as to employees work hours.  These States include the following States where Defendant has Branches: California, Connecticut, Maryland, New Jersey, New York, Pennsylvania, Virginia, Washington.

44.     The States of New York and California have wage laws providing damages for the

failure to provide accurate pay documents. In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL— and California Labor Code 226 LC, Defendant knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and New York Class members at the beginning of their employment with Defendant.

45.    Defendant further violated the WTPA and California Labor Code 226 LC by failing to provide Plaintiff and New York and California Class members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA and California Labor Code 226 LC. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

46.    In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the

wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

47.     Here, Defendant's failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendant's conduct actually harmed Plaintiff and Class members. Defendant's failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendant, allowed Defendant to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class members' rights. This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendant's failure to provide wage notices and wage statements to employees allowed Defendant to hide their responsibility and deprive employees of timely compensation.

48.     Had the wage statements Defendant provided to Plaintiff and Class members accurately listed the total number of hours Plaintiff and Class members actually worked, as required by law, Defendant would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

49.     The failure to provide proper wage notices and wage statements continues to result

in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff and Class members to struggle to pay bills and other debts.

50. Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by State wage laws, including NYLL and California Labor Code 226 LC.

51. The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

52. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

53.  "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at *18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y*., LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

54.  Here, it is clear that Defendant's failure to provide Plaintiff and Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendant submitted to the IRS on behalf of Plaintiff and Class members. That, in turn, would have increased Plaintiff's and Class members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it

constitutes an injury sufficient to provide Plaintiff with Article III standing.

55.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

56.     The case at bar is somewhat different from *Coward* inasmuch as Defendant actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*.  Plaintiff and Class members lost benefits by virtue of how Defendant reported their income, and how Defendant reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

57.     Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

58.     The *Calderon* court stressed that an employee's interest in ensuring that an

employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon,* 999 F.2d 1101 at 1106.

59.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendant *did* report what they actually paid Plaintiff and Class members. The problem, rather, is that Plaintiff and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendant sent her W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

60.     Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of NYLL and other state wage laws.

61.     Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices and statements as required by NYLL and other state wage laws.

62.    In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the State legislature of New York. Defendant's failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the State legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

63.    Here, Defendant's failure goes beyond generating a risk of harm to Plaintiff and Class members.  Defendant's conduct actually harmed Plaintiff and Class members.  Defendant's failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates and the failure to provide a wage notice properly listing the rate and frequency Plaintiff and Class members were entitled to get paid, deprived employees of the ability to contest Defendant's calculations, allowed Defendant to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class members' rights.  This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law.  Moreover, Defendant's failure to provide wage notices allowed Defendant to hide the proper frequency of pay to employees.  Defendant's failure to provide a wage notice to employees allowed Defendant to hide their responsibility and deprive employees of timely compensation.

64. Due to Defendant's failure to provide legally mandated notices such as earning statements and wage notices, Defendant was able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to provide notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff and Class members to struggle to timely pay bills and delay or forgo purchases.

65. Defendant knowingly and willfully operated their business with a policy of not properly compensating either FLSA overtime rate (of time and one-half) or the State wages and overtime (of time and one-half) to Plaintiffs, FLSA Collective Plaintiffs, and Class members, including due Defendant's policy of time shaving.

66. Defendant knowingly and willfully subjected Plaintiff, FLSA Collective Plaintiffs, and Class members to time shaving of hours worked in violation of the FLSA and the State wage laws.

67. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM
## COUNT I
## NATIONWIDE VIOLATION OF THE FAIR LABOR STANDARDS ACT

68. Plaintiff realleges and incorporate all the foregoing paragraphs as if fully set forth herein.

69. At all relevant times, Defendant was and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

21

FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

70.    At all relevant times, Defendant employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

71.    At all relevant times, Defendant had gross annual revenues in excess of $500,000.

72.    At all relevant times, Defendant had a policy and practice of failing to pay overtime wages to Plaintiff and FLSA Collective Plaintiffs for hours worked in excess of forty (40) per workweek at the proper overtime rate that is at least one-and-one-half times the regular rate of pay, due to time shaving.

73.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendant. Plaintiff intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

74.    Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendant knew or should have known such was due.

75.    Defendant failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

76.    As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

77.     Due to the intentional, willful and unlawful acts of Defendant, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages; unpaid wages, including overtime, due to time shaving; plus an equal amount as liquidated damages.

78.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**VIOLATION OF THE NEW YORK LABOR LAW**

79.     Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

80.     At all relevant times, Plaintiff and New York Class members were employed by the Defendant within the meaning of the NYLL, §§2 and 651.

81.     Defendant knowingly and willfully violated Plaintiff's and New York Class members' rights by failing to pay overtime wages for hours worked in excess of forty (40) per workweek at the proper overtime rate that is at least one-and-one-half times the regular rate of pay, including due to time shaving, in violation of the NYLL.

82.     Defendant knowingly and willfully failed to provide wage and hour notices to Plaintiff and New York Class members, as required by NYLL § 195(1).

83.     Defendant knowingly and willfully failed to provide proper wage statements to Plaintiff and New York Class members with every wage payment, as required by NYLL § 195(3).

84.     Due to the Defendant's NYLL violations, Plaintiff and New York Class members are entitled to recover from Defendant their unpaid overtime wages; unpaid wages, including overtime, due to a policy of time shaving; statutory penalties; reasonable attorney's fees; and costs and disbursements of the action.

## COUNT III
## VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS
### (brought on behalf of a Rule 23 Class)

85.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

86.    At all relevant times, Class members were employed by Defendant within the meaning of the applicable state wage and hour laws, just as Plaintiff was employed by Defendant under the meaning of the FLSA.

87.    Plaintiff can represent the Class because the requirements of the FLSA and the requirements of the state labor laws enumerated earlier are identical for purposes of his overtime class claims.

88.    Defendant knowingly and willfully violated Plaintiff and Class members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due a policy of underreporting employees' hours, in violation of the state wage and labor laws outlined above.

89.    Defendant knowingly and willfully failed to provide proper wage statements and notices to Class members, as required under the laws of New York State, California, and Minnesota.

90.    Due to Defendant's state law violations, Plaintiff and Class members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

91.    In addition to violations of State Labor overtime laws under which Plaintiff brings class (not individual) claims, Defendant violated State provisions requiring employers to pay employees all wages owed.   Since overtime wages are owed under the FLSA, these laws encompass class members' claims just as much as would explicit overtime requirements.   These state law provisions include the following:

> [e]ach employer in [Arizona] shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to his employees [and that] [e]ach employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employees up to such date . . . .[o]vertime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

Ariz. Rev. Stat. § 23-351(C); *see also Weeks v. Matrix Absence Mgmt.*, 2022 U.S. Dist. LEXIS 30849 (D. Ariz. 2022)

> Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs.

Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(c)(1)

> Damages recoverable by an employee. When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

Iowa Wage Payment Collection Law, Chapter 91A.8; *see also Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 883 (N.D. Iowa 2008) ("[T]he FLSA may be used to establish an employee's right to a certain amount of wages under the IWPCL and an employer's violation of the IWPCL for not paying all wages due its employees." (quotation omitted))

> (a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Louisiana Wage Payment Act, La. R.S. § 23:631(A)(1)

An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover the full amount of the judgment and all costs of such suit, including reasonable attorney's fees.

Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1231(1)

In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow. Any civil action for the recovery of wages must be commenced within three years after the wages become due.

South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-80(C).

92.    The Florida Minimum Wage Act has a pre-suit notice requirement. Fla. Stat. § 448.110(6)(a).    However, Plaintiff invokes the Florida Minimum Wage Act not only in his individual capacity but to bring class claims on behalf of class members residing in Florida. Thus, Plaintiff is not personally required to provide Defendant with a pre-suit notice as to each class member.    As to these absent Florida class members, courts in Florida have "found no authority mandating that a detailed pre-suit notice for each and every putative class member be served on [d]efendants under § 448.110(6) prior to the filing of a putative class action under the FMWA." *Griffith v. Landry's, Inc*., 2016 U.S. Dist. LEXIS 196397, *12 (M.D. Fla. May 17, 2016).

93.    The Third Circuit Court of Appeals has clearly demonstrated the untenability of any such requirement:

We raise the following questions to further demonstrate the error of the proposed framework adopted by our dissenting colleagues. If the dissent's "colorable legal

claim" test is a threshold inquiry for commonality, why should the court not consider every potential disqualifier from one's having a "colorable legal claim?" For example, in any class certification case, should the court consider whether all potential class members complied with applicable pre-notice requirements under the relevant substantive law? Should the court consider whether every potential class member exhausted her administrative remedies under the relevant substantive law? Should the court evaluate whether each class member's claim complies with the applicable statute of limitations? The answers to these questions most certainly implicate whether a litigant, in a class action or otherwise, has a "colorable legal claim." These questions, moreover, show how flawed, from an administrative, logical, and practical standpoint, the dissent's and objectors' approach really is. No class would ever be certified because it would be impossible to demonstrate that every class member has a "colorable legal claim." (Dissenting Op. at 10.) More than this, it would gut commonality, for, most certainly, individual issues would then predominate. There would simply be no class that could meet this commonality and predominance test.

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 310 (3rd Cir. 2011).

94.     Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims.  Any state restrictions on class actions are irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil Procedure hold. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiff's claims, and Plaintiff's claims are not subject to dismissal based on the state statutes prohibiting class actions."); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 controls.").

95.    Due to Defendant's state law violations, Plaintiff and Class members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class members respectfully requests that this Court grant the following relief:

a)  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, and State wage laws;

b)  An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c)  An award of unpaid overtime wages;

d)  An award of unpaid wages, including overtime compensation at the proper rate of one-and-one-half times the regular rate of pay for hours worked in excess of forty (40) per workweek, due to time shaving due under the FLSA and State wage laws;

e)  An award of statutory penalties as a result of Defendant's failure to comply with the State wage laws' wage notice and wage statement requirements;

f)  An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay for overtime wage, pursuant to the FLSA and/or state wage laws;

g)  An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

h)  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

28

i)   Designation of this action as a class action pursuant to F.R.C.P. 23;

j)   Designation of Plaintiff as Representative of the Class; and

k)   Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  May 23, 2024

Respectfully submitted,

By:    */s/ C.K. Lee*
C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs, and the Class*